[Cite as *State v. Harvey*, 2025-Ohio-430.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## ALLEN COUNTY

STATE OF OHIO,

    PLAINTIFF-APPELLEE,

  v.

JAQUAVEIUS E. HARVEY,

    DEFENDANT-APPELLANT.

CASE NO. 1-23-37

O P I N I O N

Appeal from Allen County Common Pleas Court
Trial Court No. CR2020 0383

Judgment Affirmed

Date of Decision: February 10, 2025

APPEARANCES:

    *Chima R. Ekeh* for Appellant

    *John R. Willamowski, Jr.* for Appellee

**ZIMMERMAN, J.**

{¶1} Defendant-appellant, Jaquaveius E. Harvey ("Harvey"), appeals the June 7, 2023 judgment entry of sentence of the Allen County Court of Common Pleas. For the reasons that follow, we affirm.

{¶2} On October 15, 2020, the Allen County Grand Jury indicted Harvey on Count One of trafficking in heroin in violation of R.C. 2925.03(A)(1), (C)(6)(d), a third-degree felony; Counts Two, Three, and Four of trafficking in heroin in violation of R.C. 2925.03(A)(1), (C)(6)(e), all first-degree felonies; and Count Five of engaging in a pattern of corrupt activity in violation of R.C. 2923.32(A)(1), (B)(1), a first-degree felony. On January 22, 2021, Harvey appeared for arraignment and entered pleas of not guilty.

{¶3} After a bench trial on May 22, 2023, the trial court found Harvey guilty of all five counts.

{¶4} On June 7, 2023, the trial court sentenced Harvey to 36 months in prison on Count One; four years in prison on Counts Two, Three, and Four, respectively; and ten years minimum to 15 years maximum in prison on Count Five. The trial court ordered that the sentences imposed on Counts Two, Three, and Four be served concurrently with each other. The trial court further ordered that the sentences imposed on Counts One and Five be served consecutively to the sentences imposed

on Counts Two, Three, and Four for a total aggregate sentence of 17 years minimum to 22 years maximum in prison.

{¶5} Harvey filed his notice of appeal on June 8, 2023. Harvey raises two assignments of error for our review. For ease of discussion, we will address both assignments of error together.

### First Assignment of Error

**Appellant's Conviction And Sentence For Counts II, III, And IV Were Not Supported By Legally Sufficient Evidence. (Tr. pg. 203, tab 16-25; pg. 204, tab 1-23)**

### Second Assignment of Error

**Appellant's Conviction And Sentence For Count V Was Not Supported By Sufficient Evidence. (Tr. pg. 205, tab 1-9)**

{¶6} In his first and second assignments of error, Harvey argues that his trafficking-in-heroin convictions under Counts Two, Three, and Four and his engaging-in-a-pattern-of-corrupt-activity conviction are based on insufficient evidence. As to the trafficking-in-heroin convictions under Counts Two, Three, and Four, Harvey argues that these convictions are based on insufficient evidence because "the lab reports analyzing the substances sold . . . revealed no controlled substances were detected." (Appellant's Brief at 9). With respect to the engaging-in-a-pattern-of-corrupt-activity conviction, Harvey contends that the State failed to present sufficient evidence to show that he was "'associated with an enterprise' that participated in two or more acts . . . of trafficking in drugs." (*Id.* at 15).

*Standard of Review*

**{¶7}** "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1981), paragraph two of the syllabus, superseded by state constitutional amendment on other grounds as stated in *State v. Smith*, 80 Ohio St.3d 89, 102 (1997), fn. 4. Accordingly, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Jenks*, 61 Ohio St.3d at paragraph two of the syllabus.

**{¶8}** "In deciding if the evidence was sufficient, we neither resolve evidentiary conflicts nor assess the credibility of witnesses, as both are functions reserved for the trier of fact." *State v. Jones*, 2013-Ohio-4775, ¶ 33 (1st Dist.). *See also State v. Berry*, 2013-Ohio-2380, ¶ 19 (3d Dist.) ("Sufficiency of the evidence is a test of adequacy rather than credibility or weight of the evidence.").

*Trafficking-in-Heroin Convictions*
*Under Counts Two, Three, and Four*

**{¶9}** Under Counts Two, Three, and Four, Harvey was convicted of trafficking in heroin in violation of R.C. 2925.03, which provides, in relevant part,

(A) No person shall knowingly do any of the following:

(1) Sell or offer to sell a controlled substance or a controlled substance analog;

. . .

(C) Whoever violates division (A) of this section is guilty of one of the following:

. . .

(6) If the *drug* involved in the violation is heroin or a compound, mixture, preparation, or substance containing heroin, whoever violates division (A) of this section is guilty of trafficking in heroin. The penalty for the offense shall be determined as follows:

. . .

(e) Except as otherwise provided in this division, if the amount of the *drug* involved . . . equals or exceeds ten grams but is less than fifty grams, trafficking in heroin is a felony of the second degree, and the court shall impose as a mandatory prison term a second degree felony mandatory prison term. If the amount of the *drug* involved is within that range and if the offense was committed in the vicinity of a school [or] in the vicinity of a juvenile . . . trafficking in heroin is a felony of the first degree, and the court shall impose as a mandatory prison term a first degree felony mandatory prison term.

(Emphasis added.) R.C. 2925.03(A)(1), (C)(6)(e).

A person acts "knowingly" when

the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when the person is aware that such circumstances probably exist. When knowledge of the existence of a particular fact is an element of an offense, such knowledge is established if a person *subjectively believes* that there is a high probability of its existence and fails to make inquiry or acts with a conscious purpose to avoid learning the fact.

(Emphasis added.) R.C. 2901.22(B).

**{¶10}** "Undoubtedly, a person can be convicted for offering to sell a controlled substance in violation of R.C. 2925.03(A)(1) without actually transferring a controlled substance to the buyer." *State v. Chandler*, 2006-Ohio-2285, ¶ 9. "'Controlled substance' means a *drug*, compound, mixture, preparation, or substance included in schedule I, II, III, IV, or V." (Emphasis added.) R.C. 3719.01(C). Moreover, as used in R.C. 2925.03, "'drug' includes any substance *that is represented* to be a drug." (Emphasis added.) R.C. 2925.03(I).

**{¶11}** On appeal, Harvey argues that his trafficking-in-heroin convictions under Counts Two, Three, and Four are based on insufficient evidence because the substances sold were tested and found to contain no controlled substance. Harvey further argues that, under the authority of *Chandler*, "[s]ince no detectable amount of the controlled substance was found in Counts II, III, and IV, [he] should not be subjected to the enhanced penalties under R.C. 2925.03(C)." (Appellant's Brief at 12). Even though R.C. 2925.03(I) was enacted after *Chandler* to expand the definition of "drug" under R.C. 2925.03 to include "any substance that is represented to be a drug," Harvey argues that *Chandler* was not superseded by R.C. 2925.03(I). According to Harvey, there can be no conviction for trafficking under R.C. 2925.23(A) without a controlled substance. Thus, Harvey contends that the evidence in this case supports convictions "under R.C. 2925.37(B) for sale of counterfeit controlled substance." (Appellant's Brief at 13).

**{¶12}** Harvey's sufficiency-of-the-evidence argument is without merit. *See State v. Burse*, 2024-Ohio-2027, ¶ 14-17 (3d Dist.). Our review of the record reveals that the State presented sufficient evidence to show that Harvey knowingly sold or offered to sell substances *that he represented* to be heroin in amounts that exceeded the bulk amount identified under R.C. 2925.03(C)(6)(e) and in the vicinity of a juvenile and/or a school. *See* R.C. 2925.03(I). Specifically, the State presented the testimony of Investigator Aaron Montgomery ("Investigator Montgomery") of the Lima Police Department, assigned to the West Central Ohio Crime Task Force, who testified that the task force conducted four controlled drug buys to purchase heroin from Harvey. The State also presented the testimony of a confidential informant ("the CI") used in all four controlled drug buys. In addition, the State presented audio recordings of the controlled drug buys and a video recording of the jail interview conducted by Investigator Montgomery wherein Harvey admitted to trafficking in heroin.

**{¶13}** The first controlled drug buy (Count One) took place on February 19, 2020.[1] Investigator Montgomery testified that the task force, with the assistance of the CI, purchased $700 worth of heroin from Harvey. The evidence from the drug transaction—being "[o]ne (1) knotted plastic bag containing off-white

---

[1] The trafficking-in-heroin conviction under Count One is not challenged on appeal.

substance" weighing approximately 9.08 grams—was tested by the Bureau of Criminal Investigation ("BCI") and found to contain heroin. (State's Exhibit 6).

{¶14} The second controlled drug buy (Count Two) took place on February 24, 2020. The CI testified that he contacted Harvey by phone to purchase 15 grams of heroin. The "deal" struck between Harvey and the CI was 15 grams of heroin for $1,200. (May 22, 2023 Tr. at 41-42). The CI further testified that the task force provided the money for the purchase and a "wire" to record the drug transaction. (*Id.* at 42). When the CI arrived at the buy location, a juvenile (later identified as Harvey's minor cousin C.C.) completed the drug transaction. As the CI was driving away from the buy location, Harvey called the CI to confirm that the CI received the drugs. During the phone conversation, the CI asked Harvey if the "little dude" was "cool" and Harvey responded affirmatively. (State's Exhibit 9). Thereafter, the CI met with the task force and turned over the drugs. Investigator Montgomery testified that the evidence from the drug transaction—being "[o]ne (1) knotted plastic bag containing off-white substance" weighing approximately 14.74 grams, was tested by BCI and "[n]o controlled substance found." (State's Exhibit 11).

{¶15} The third controlled drug buy (Count Three) took place on February 27, 2020. The CI contacted Harvey by phone to purchase heroin and the "deal" was 15 grams of heroin for $1,200. (May 22, 2023 Tr. at 48). As with the first and second controlled drug buys, the task force provided the money for the purchase and a recording device. When the CI arrived at the buy location, Harvey was present

and completed the drug transaction. C.C. was also present during the drug transaction. Thereafter, the CI met with the task force and turned over what he had purchased from Harvey. Investigator Montgomery testified that the evidence from the drug transaction—being "[o]ne (1) knotted white plastic bag with off-white substance" weighing approximately 12.95 grams, was tested by BCI and "[n]o controlled substance found." (State's Exhibit 18). Investigator Montgomery further testified that the third controlled drug buy took place within the vicinity of a school.

{¶16} The fourth controlled drug buy (Count Four) took place on March 2, 2020. The CI testified that he received a text message from Harvey stating, "He got some new shit." (May 22, 2023 Tr. at 54). The CI interpreted the text message to mean that Harvey had heroin to sell. The CI contacted Harvey by phone to purchase 15 grams of heroin. The "deal" struck between Harvey and the CI was 15 grams of heroin for $1,200. (*Id.* at 55). As with the prior controlled drug buys, the task force provided the money for the purchase and a recording device. When the CI arrived at the buy location, the CI called Harvey and Harvey told the CI where to park. After the CI parked his vehicle as directed by Harvey, C.C. entered the front passenger side and completed the transaction. Thereafter, the CI met with the task force and turned over the drugs. Investigator Montgomery testified that the evidence from the drug transaction—being "[o]ne (1) knotted white plastic bag with white substance" weighing approximately 15.01 grams, was tested by BCI and "[n]o controlled substance found." (State's Exhibit 29).

**{¶17}** A couple of days after the fourth controlled drug buy, Harvey was arrested on suspicion of drug trafficking and Investigator Montgomery conducted a jail interview.[2]  After informing Harvey of his *Miranda* rights, Investigator Montgomery asked, "How much have you been selling?"  (State's Exhibit 30). Harvey stated that he does not sell, instead, he has other people sell for him to make money.  Investigator Montgomery then asked, "How much do you have them push for you?"  (*Id.*).  Harvey stated that he "pushes" about ten grams a week.  (*Id.*). Harvey further stated that his supply comes from "Deontrae" in Detroit.  (*Id.*). Harvey explained that he does not travel to Detroit to pick up the supply, rather, he has other people do that for him.  When Investigator Montgomery asked if he sells "heroin" and nothing else, Harvey responded affirmatively.  (*Id.*).  Harvey also stated that he does not "step on it" and that the heroin is sold as it comes to him. (*Id.*).

**{¶18}** At trial, Investigator Montgomery testified that, during the jail interview, he and Harvey discussed Deontrae Forrest ("Forrest").  Investigator Montgomery further testified that, during the jail interview, he and Harvey reached an agreement wherein "if [Harvey] provided a phone number for who we talk about Deontrae Forrest who is involved, at that time, that if it worked out to be something I would give the prosecutors awareness of such."  (May 22, 2023 Tr. at 150).

---

[2] A video recording of the jail interview was played at trial and admitted into evidence as State's Exhibit 30.

**{¶19}** At some point subsequent to the jail interview, Harvey provided a phone number for Forrest.  At trial, Investigator Montgomery testified that the number "was no good, [led] to nowhere." (*Id.*).  Approximately seven months later, Harvey was indicted on the charges in this case.

**{¶20}** Based on the evidence presented, and when reviewing it in a light most favorable to the prosecution, we conclude that any rational trier of fact could have found the essential elements of R.C. 2925.03(A)(1), (C)(6)(e) were proven beyond a reasonable doubt.  *See Burse*, 2024-Ohio-2027, at ¶ 17 (3d Dist.).  *See also State v. Brown*, 2024-Ohio-2027, ¶ 32 (3d Dist.).  At all times relevant, Harvey knowingly sold or offered to sell substances *that he represented* to be heroin in amounts that exceeded the bulk amount identified under R.C. 2925.03(C)(6)(e) and in the vicinity of a juvenile and/or a school.  *See* R.C. 2925.03(I).  Therefore, Harvey's trafficking-in-heroin convictions under Counts Two, Three, and Four are based on sufficient evidence.

**{¶21}** Harvey's first assignment of error is overruled.

*Engaging-in-a-Pattern-of-Corrupt-Activity Conviction*

**{¶22}** Harvey was convicted of engaging in a pattern of corrupt activity in violation of R.C. 2923.32(A)(1), which provides,

> No person employed by, or associated with, any enterprise shall conduct or participate in, directly or indirectly, the affairs of the enterprise through a pattern of corrupt activity or the collection of an unlawful debt.

An "[e]nterprise" is defined as including

> any individual, sole proprietorship, partnership, limited partnership, corporation, trust, union, government agency, or other legal entity, or any organization, association, or group of persons associated in fact although not a legal entity. "Enterprise" includes illicit as well as licit enterprises.

R.C. 2923.31(C). "An association-in-fact enterprise has been defined as 'a group of persons associated together for a common purpose of engaging in a course of conduct.'" *State v. Beverly*, 2015-Ohio-219, ¶ 9, quoting *U.S. v. Turkette*, 452 U.S. 576, 583 (1981).

> A "[p]attern of corrupt activity" means
>
> two or more incidents of corrupt activity, whether or not there has been a prior conviction, that are related to the affairs of the same enterprise, are not isolated, and are not so closely related to each other and connected in time and place that they constitute a single event.

R.C. 2923.31(E). "Corrupt activity" means "engaging in, attempting to engage in, conspiring to engage in, or soliciting, coercing, or intimidating another person to engage in" specific conduct. R.C. 2923.31(I). The predicate offenses in this case are the drug-trafficking offenses in violation of R.C. 2925.03. *See* R.C. 2923.31(I)(2)(c).

{¶23} On appeal, Harvey argues that the State failed to present sufficient evidence to show that he was "'associated with an enterprise' that participated in two or more acts . . . of trafficking in drugs." (Appellant's Brief at 15). Even though Harvey acknowledges that he "admitted in his police interview with Investigator

Aaron Montgomery that he was getting his dope from Forrest," Harvey contends that there is no evidence that he and Forrest had a common purpose to engage in drug trafficking. (*Id.* at 16). Similarly, with respect to C.C., Harvey argues that the evidence was insufficient to show that he and C.C. had a common purpose because C.C. participated in the drug trafficking "to make some easy money too." (*Id.* at 17).

**{¶24}** Based on our review of the record, we conclude that the State presented sufficient evidence to show that Harvey associated with an enterprise (consisting of, at least, Forrest and C.C.) for the common purpose of engaging in the corrupt activity of drug trafficking. *See Beverly*, 2015-Ohio-219, at ¶ 9-11. Specifically, the State presented video evidence of the jail interview wherein Harvey admitted that Forrest was his supplier and that he used other people sell the heroin for him. Moreover, the testimonial evidence of Investigator Montgomery and the CI further established that Harvey engaged in drug trafficking and used C.C. to complete two controlled drug buys for him.

**{¶25}** Accordingly, after viewing the evidence in a light most favorable to the prosecution, we conclude that any rational trier of fact could have found beyond a reasonable doubt that Harvey associated with an enterprise for the common purpose of participating in two or more incidents of drug trafficking. Therefore, Harvey's engaging-in-a-pattern-of-corrupt-activity conviction is based on sufficient evidence.

**{¶26}** Harvey's second assignment of error is overruled.

**{¶27}** Having found no error prejudicial to the appellant herein in the particulars assigned and argued, we affirm the judgment of the trial court.

*Judgment Affirmed*

**MILLER and EPLEY, J.J., concur.**

**\*\* Judge Christopher B. Epley of the Second District Court of Appeals, sitting by Assignment of the Chief Justice of the Supreme Court of Ohio.**

**/hls**